## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MAINE

KIMBERLY MORIN,

     Plaintiff,

     v.

IDBI, INC. d/b/a AUCOCISCO SCHOOL,

     Defendant.

Civil Action No._____

**(JURY TRIAL DEMANDED)**

## COMPLAINT

NOW COMES Plaintiff, Kimberly Morin ("Plaintiff"), by and through her attorneys, Kline Law Offices, and complains against Defendant, IDBI, Inc. d/b/a Aucocisco School ("Defendant"), as follows:

## PARTIES

1. Plaintiff is a resident of Portland, County of Cumberland, State of Maine.

2. Defendant is a closely held corporation organized under the laws of Maine with its principal place of business in Cape Elizabeth, County of Cumberland, State of Maine.

3. Defendant owns and operates a "state-certified special-purpose day school."

4. Barbra Melnick, (hereinafter "Ms. Melnick") although not a party, is a shareholder as well as the president of Defendant.

## JURISDICTION

5. This case arises under the Americans with Disabilities Act (42 U.S.C. §12101 *et seq.*), Maine's Family Medical Leave Act (26 M.R.S.A. §843 *et seq.*), the Fair Labor Standards

Act (29 U.S.C. §207 *et seq.*), Maine's overtime statute (26 M.R.S.A. §664(3)); and Maine's statute regarding timely payment of wages codified at 26 M.R.S.A §§621-A, 635(2).

6.      This Court has jurisdiction over the claim arising under federal law pursuant to the United States Constitution, Article 3, Section 2, Clause 1 and 28 U.S.C. §1331.

7.      In addition, jurisdiction over the state law claims is proper pursuant to 28 U.S.C. §1367(2), as the state and federal claims arise under the same set of facts regarding Plaintiff's medical leave, return to work, subsequent discharge, and handling of wages.

8.      Venue is proper pursuant to 28 U.S.C. §1391(b).

## BACKGROUND FACTS

9.      Plaintiff was hired by Ms. Melnick in March of 1999 as an Office Manager.

10.     In this position, Plaintiff worked closely with Ms. Melnick.

11.     Plaintiff's duties included bookkeeping, payroll, billing, making deposits, and ordering supplies.

12.     Plaintiff also drove students to and from vocational high schools in the area and picked up students who missed the school bus.

13.     Plaintiff was never reimbursed for mileage for these trips.

14.     On May 10, 2007, Plaintiff was diagnosed by Sheri Piers, ANP-C (hereinafter "Dr. Piers"), as having anxiety and depression.

15.     On November 24, 2007, Plaintiff was admitted to Mercy Hospital after having an anxiety attack.

16.     Plaintiff was treated and instructed to follow up with her primary care provider to begin antidepressant medication.

17.    On November 28, 2007, Plaintiff again experienced an anxiety attack while in Ms. Melnick's office.

18.    During this episode, Plaintiff went in and out of consciousness and experienced significant shaking in her right upper extremity.

19.    Ms. Melnick rode in the ambulance with Plaintiff to Mercy Hospital in Portland, Maine.

20.    Plaintiff's symptoms persisted while she was en route to the hospital, while she was being admitted, and during her examination at Mercy Hospital.

21.    Ms. Melnick waited at Mercy Hospital for Plaintiff to be discharged.

22.    However, Plaintiff was transferred to Maine Medical Center.

23.    The doctors at Maine Medical Center "felt that [Plaintiff's] right upper extremity movements were a form of conversion disorder in the setting of a recent social stress at home."

24.    On January 23, 2008, Plaintiff was sent home from work because she could not concentrate after her husband called her at work to discuss a divorce.

25.    Plaintiff went home but was later hospitalized for depression.

26.    On February 14, 2008, Plaintiff followed up with Dr. Piers to again receive treatment for her depression.

27.    At this point, her symptoms included significant weight loss, fatigue, difficulty focusing, and inability to control her emotions.

28.    Over the course of the next year, Plaintiff regularly treated with Dr. Piers.

29.    Plaintiff reported to Ms. Melnick that she was seeing various doctors, the reasons behind the visits, as well as any diagnoses or discussions she had with her doctors.

30.     On February 24, 2008, Plaintiff was again hospitalized due to her depression after her son found her in an altered mental state.

31.     During this hospitalization, Plaintiff received a secondary diagnosis of pneumonia in addition to depression and anxiety.

32.     Per order of her physician, Plaintiff went on medical leave from February 24, 2008 through May 4, 2008.

33.     Plaintiff received her regular salary for the first two weeks of medical leave.

34.     Upon returning to work on May 5, 2008, Ms. Melnick transferred a number of Plaintiff's regular duties to other employees.

35.     In addition, Ms. Melnick switched Plaintiff's compensation from salary to hourly.

36.     Plaintiff was not paid her hourly (or any other) wage from May 5 through May 16, 2008.

37.     In June, Ms. Melnick told Plaintiff that she was displeased that Plaintiff missed time from work and that she did not want to risk Plaintiff taking additional medical leave.

38.     On July 21, 2008, Plaintiff's hours were reduced from 40 hours to 20 hours per week, despite Plaintiff's willingness and ability to work full-time.

39.     Ms. Melnick justified the decrease in hours on the grounds that the school had to reduce its operating budget.

40.     Yet, shortly after Plaintiff's hours were reduced, Defendant made the following personnel changes:

- A teacher was transferred from an hourly wage to salary;

- A new teacher was hired and trained in office procedures, which were previously performed by Plaintiff; and

- An outside CPA was retained to undertake Plaintiff's bookkeeping duties.

41.     Beyond a reduction in hours, Plaintiff's desk and computer were distributed to other employees.

42.     Without a desk or a computer, Plaintiff was relegated to answering the phone, greeting students and parents, and ordering office supplies.

43.     Due to her underemployment, Plaintiff filed for unemployment benefits.

44.     In response to Plaintiff's application for unemployment benefits, Ms. Melnick told Plaintiff that she was upset and that she would be increasing Plaintiff's scheduling by five hours per week, thereby preventing the collection of further partial unemployment benefits.

45.     On November 13, 2008, Ms. Melnick terminated Plaintiff's employment with Defendant.

46.     Plaintiff filed a Charge with the Maine Human Rights Commission on March 10, 2009.

**COUNT I**
**Violation of the Americans with Disabilities Act**

47.     Plaintiff realleges the factual allegations in paragraphs 1-46 as if set forth fully herein.

48.     Plaintiff suffered from a disability under the Americans with Disabilities Act.

49.     In 2007, Plaintiff was diagnosed with depression and anxiety, which affected her appetite, sleep, concentration, ability to control her emotions, and ability to work.

50.     Further, Plaintiff's anxiety caused panic attacks, during which Plaintiff became unresponsive to physical and/or verbal stimulus.

5

51.     Ms. Melnick perceived and treated Plaintiff as having a disability, as Plaintiff told Ms. Melnick of her disability and Ms. Melnick personally observed Plaintiff in a depressed and anxious state.

52.     Plaintiff was otherwise qualified to perform the essential functions of her position with reasonable accommodation.

53.     Plaintiff satisfactorily performed her job for nine years prior to being discharged.

54.     To gain job-specific training, Plaintiff attended Andover College and seminars.

55.     Prior to taking medical leave in 2008, Plaintiff never received any disciplinary or performance counseling.

56.     Plaintiff satisfactorily performed the duties of her job.

57.     Plaintiff regularly worked with Ms. Lambert, CPA, in performing her bookkeeping duties.

58.     Ms. Lambert expressed that Plaintiff capably performed her bookkeeping responsibilities.

59.     Plaintiff was discharged on account of her disability.

60.     After coming back from medical leave, Ms. Melnick stripped Plaintiff of many of her fundamental job responsibilities, cut her hours, converted her from salary to hourly, and redistributed to others the tools and materials necessary to perform her job.

61.     Ms. Melnick then stated that she was afraid Plaintiff would miss additional time from work on account of her disability.

62.     These retaliatory measures were made on account of Plaintiff's disability and also resulted in disparate treatment of Plaintiff.

63.    Shortly after Plaintiff's third hospitalization for depression, Plaintiff was terminated.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

- Reinstatement;

- Payment of lost wages and benefits;

- Punitive damages; and

- Reasonable costs along with attorney's fees and all other relief to which she is entitled.

## COUNT II
### Unlawful Retaliation for Exercising Family Medical Leave Act Rights

64.    Plaintiff realleges the factual allegations in paragraphs 1-63 as if set forth fully herein.

65.    Plaintiff was employed by Defendant for more than 12 consecutive months prior to taking medical leave.

66.    Defendant had more than 15 employees.

67.    Plaintiff suffers from serious health conditions, as her depression and anxiety required her to seek "continuing treatment" from Dr. Piers, Dr. Finkelstein, and Maine Medical Center from May 10, 2007 to date.

68.    The above medical conditions prevented Plaintiff from performing the functions of her position, as she could not sleep, concentrate, or control her emotions.

69.    These symptoms precluded her from doing detail-oriented tasks and interfacing with students at Defendant's school.

70.    Plaintiff provided timely notice of her inability to work due to her depression and anxiety soon after her February 28, 2008 hospitalization.

71.    Upon returning from medical leave, Ms. Melnick told Plaintiff that she was displeased that Plaintiff missed time from work and that she did not want to risk Plaintiff taking additional medical leave.

72.    In addition, Ms. Melnick took the following actions in response to Plaintiff's exercise of rights afforded to her by the FMLA:

- Switched Plaintiff's compensation from salary to hourly;

- Withheld Plaintiff's wages from May 5 through May 16, 2008;

- Reduced Plaintiff's hours from 40 hours to 20 hours per week;

- Reallocated Plaintiff's office equipment;

- Reassigned the "skilled" functions of Plaintiff's position to others;

- Interfered with Plaintiff's unemployment benefits; and

- Terminated Plaintiff.

73.    The actions outlined above constitute unlawful interference and discrimination under the FMLA pursuant to 26 M.R.S.A. §847(1)&(2).

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

- Reinstatement;

- Payment of lost wages and benefits;

- Liquidated damages; and

- Reasonable costs along with attorney's fees and all other relief to which she is entitled.

## COUNT III
### Overtime Wages Not Paid

74.     Plaintiff realleges the factual allegations in paragraphs 1-73 as if set forth fully herein.

75.     Plaintiff was a clerical employee whose duties included bookkeeping, payroll, billing, making deposits, and ordering supplies.

76.     Defendant misclassified Plaintiff as an "exempt" employee under the Fair Labor Standards Act.

77.     Plaintiff was not an administrative, executive, or professional employee pursuant to 29 U.S.C. §213(a)(1) or 26 M.R.S.A. §603(3)(E).

78.     Plaintiff's duties did not involve management or general business operations.

79.     Further, Plaintiff did not exercise discretion in her position, as she followed pre-established procedures and guidelines.

80.     Plaintiff regularly worked in excess of forty (40) hours per week.

81.     Plaintiff received a weekly salary until May 5, 2008.

82.     Plaintiff received no additional compensation for hours worked beyond forty (40) per week in violation of 29 U.S.C. §207(a) and 26 M.R.S.A. §664(3).

83.     Further, Defendant never afforded Plaintiff the opportunity to take a 30 minute rest break in violation of 26 M.R.S.A. §601.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

- Payment of overtime wages;

- Liquidated damages, and

▪ Reasonable costs along with attorney's fees and all other relief to which she is entitled.

## COUNT IV
### Failure to Timely Remit Wages

84. Plaintiff realleges the factual allegations in paragraphs 1-83 as if set forth fully herein.

85. On May 5, 2008, Defendant switched Plaintiff from a salaried employee to an hourly employee.

86. From May 5 through May 16, 2008, Plaintiff worked for Defendant but was not paid an hourly wage or a weekly salary.

87. Plaintiff has yet to receive any payment for this two week period in violation of 26 M.R.S.A §621-A(1)&(2).

88. Plaintiff was told by Defendant that she was not being paid because she received her weekly salary for the first two weeks of her medical leave.

89. Defendant's withholding of Plaintiff's wages exceeded 10% of Plaintiff's net pay in violation of 26 M.R.S.A. §635(2).

90. No written agreement existed between Plaintiff and Defendant for such withholding.

91. Defendant had more than 25 employees.

92. In the alternative, Defendant was aware of the prohibitions codified at 26 M.R.S.A. §635(2).

93. Plaintiff demanded that Defendant return the money held in excess of 10% of her net wage.

94.     Defendant failed to return the excess money within three days of the demand.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

- Payment of wages due under her hourly agreement;

- Liquidated damages, and

- Reasonable costs along with attorney's fees and all other relief to which she is entitled.

**A jury trial is demanded on all Counts pursuant to F.R.Civ.P. 38(b).**

Dated: November 11, 2010                     /s/  *Robert W. Kline*
                                             Robert W. Kline
                                             Kline Law Offices
                                             120 Exchange St., 2nd Floor
                                             P.O. Box 7859
                                             Portland, ME 04112
                                             (207) 772-4900
                                             rkline@klinelaw.me